IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

TOMMIE ETTA O'NEAL                                                    PLAINTIFF

v.                                                    CAUSE NO. 3:25-CV-25-SA-RP

MILLSTONE MEDICAL OUTSOURCING                                        DEFENDANT

ORDER AND MEMORANDUM OPINION

On January 29, 2025, Tommie Etta O'Neal, who is proceeding *pro se*, initiated this litigation by filing her Complaint [1] against Millstone Medical Outsourcing. Now before the Court is Millstone's Motion for Summary Judgment [31], which is ripe for review. Having considered the parties' submissions, along with the applicable authorities, the Court is prepared to rule.

*Relevant Background*

In March 2023, O'Neal began her employment with Millstone as an NCR Coordinator. The position was located in Olive Branch, Mississippi. For reference, Millstone describes itself as "a leading provider of customized outsourcing solutions to the medical device industry with over twenty (20) years of experience organizing outsourced supply chains." [32] at p. 2. The Job Description for the NCR Coordinator position O'Neal held with the company provides:

> The NCR Coordinator is responsible for maintaining and controlling the Non-Conformance Report Process.
>
> Performs other duties as requested or required across all areas of the Company. This position includes visual inspection of medical devices and instruments which requires the ability to detect defects. 20/20 or corrected 20/20 vision is required.

[31], Ex. 2 at p. 1.

A little over a year after her employment commenced, on April 4, 2024, O'Neal had a medical episode at work. She described experiencing double vision. After O'Neal notified other employees of her condition, paramedics were called to the scene. She was eventually transported by ambulance to Methodist Hospital. O'Neal was released from the hospital the same day but returned for medical treatment multiple times over the following days. She was at some point diagnosed with third cranial nerve palsy.

Because of her medical condition, O'Neal was required to be off work for an extended period of time and was approved for leave under the Family and Medical Leave Act ("FMLA"). Via letter dated April 19, 2024, Gloria Coleman, who serves as Millstone's HR Manager, notified O'Neal that she had been approved "for a leave of absence from approximately 04/05/2024 through 05/16/2024[.]" [31], Ex. 4 at p. 1. The April 19, 2024 letter also advised O'Neal of certain requirements pertaining to her leave:

> 5. If you are unable to return by the end of your leave, you must request an extension of the leave, in writing, <u>five days prior</u> to the leave expiration date. If Millstone Medical does not extend the leave, you must return to work on the originally scheduled return date or be considered to have voluntarily resigned from your position. Extensions of leave will only be considered on a case-by-case basis.
>
> 6. If you are on a leave of absence due to medical reasons, <u>you must submit a physician's statement releasing you back to work on or prior to your date of return</u>.

*Id*. at p. 2 (emphasis in original).

On May 17, 2024, O'Neal emailed Coleman an update regarding her medical status. *See* [31], Ex. 5 at p. 1. Millstone construed that email as a request by O'Neal to extend her leave of absence through July 31, 2024 and responded to her via letter dated May 23, 2024. In that response letter, Coleman, on behalf of Millstone, advised O'Neal as follows:

2

> Your request for a leave of absence from approximately 04/05/2024 through 07/31/2024 has been denied. The reason is that your 12-weeks of protected FMLA leave will be exhausted on 06/27/2024. Therefore, Millstone will only be able to approve your leave of absence from 04/05/2024 through 06/27/2024. After 06/27/2024, your absences will not be protected.

[31], Ex. 6 at p. 1.

The letter included the same requirements that O'Neal make any requests to extend her leave in writing at least five days prior to the scheduled return date and that she submit a physician's release upon her return.

On June 21, 2024, O'Neal again emailed Coleman to request an extension of her leave. In that email, O'Neal explained that she had "not been fully discharged from all doctor's care" and provided dates of additional doctor's appointments that she had scheduled for June 27, 2024; July 16, 2024; and July 19, 2024. [31], Ex. 7 at p. 1.

In a letter dated June 28, 2024, Coleman advised O'Neal that she had exhausted "all available sick and vacation leave, as well as the FMLA unpaid leave of absence granted . . . as an accommodation." [31], Ex. 8 at p. 1. The letter further advised O'Neal: "[y]ou are not eligible for any additional leave as required by state and federal laws or under any company policy and we are unable to continue accommodating your absences." [31], Ex. 8 at p. 1. Additionally, the letter explained that O'Neal's employment would be terminated effective July 8, 2024 if she was not able to return to work.

On July 1, 2024, O'Neal again emailed Coleman and advised: "I am requesting an extension of the FMLA because my last 2 doctor appointments are on July 16, 2024. I called this morning and left a message. I do have corrected 20/20 vision as required per my optometrist." [31], Ex. 9 at p. 1. Seemingly, Coleman did not respond to that email.

On July 8, 2024, O'Neal reported to work. According to O'Neal, when she arrived, Coleman asked her if she had the requisite paperwork releasing her to return to work. When O'Neal told Coleman that she had not yet been medically released to return, Coleman allegedly told her "[w]ell, if you can go and contact your doctors and see if they will see you and get them to fill out your paper and release you today, you can bring me your paperwork tomorrow, and you can come back to work tomorrow." [31], Ex. 3 at p. 16.

O'Neal testified that she then left and attempted to contact her doctors to request the documentation but later that morning decided to call Coleman:

> So I had this strange feeling about 11:15 or 11:30 that day. I said, "Let me call [Gloria Coleman]." I called her, and she said, "Oh, I'm" -- I said, "Gloria, this is Tommie. This is Ms. Tommie."
>
> She said, "Oh, I'm glad you called. I was just getting ready to call you.
>
> And I said, "Okay."
>
> And she said, "I spoke with the management team, and they just -- we just decided to go ahead and terminate you. And when you get released from the doctor, you'll be eligible to come back and reapply if there's something that you can do."

*Id*. at p. 16-17.

Coleman sent O'Neal an official termination letter dated that same day. Thereafter, O'Neal filed a charge of discrimination with the EEOC, alleging that she had been discriminated and retaliated against because of her disability in violation of the Americans with Disabilities Act ("ADA").

Following receipt of a right to sue letter, O'Neal initiated this lawsuit. In her Complaint [1], she asserts ADA claims for discrimination, failure to accommodate, and retaliation. Through the present Motion [31], Millstone seeks summary judgment in its favor on all three claims.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As noted previously, O'Neal asserts three separate claims under the ADA—discrimination, failure to accommodate, and retaliation. Before addressing each of those claims and the asserted bases for dismissal, the Court notes that O'Neal's Response in Opposition [34] contains minimal information. The first page of the Response [34] contains essentially the entirety of her legal argument and provides as follows:

> Although Plaintiff did not expressly use the words "reasonable accommodation[,]" Defendant was fully aware of Plaintiff's ongoing medical condition, doctor's restrictions, and continuing need for medical leave through FMLA and short-term disability documentation. Defendant's Human Resources Department had actual knowledge of Plaintiff's medical limitations and yet failed to inform her of her right to request reasonable accommodations or to engage in the required interactive process. Instead, Defendant directed Plaintiff to request an FMLA extension it knew she could not obtain. HR was aware through Plaintiff's emails of her upcoming doctor appointment and expected release dates, but took no steps to advise her that unpaid medical leave, light duty, or reassignment could serve as a reasonable accommodation under the ADA.

[34] at p. 1.

The Response [34] then contains a factual recitation followed by a section titled "pending evidence under Rule 56(d)" wherein O'Neal "notifies the Court that she has issued as subpoena duces tecum to the Mississippi Department of Employment Security (MDES) [] requesting a recording and a written transcript of her unemployment appeal hearing with the Defendant." *Id*. at p. 6.[1] Notably absent from O'Neal's Response [34] is any reference to *specific* parts of the record and/or reference to any applicable case law.

However, the Court is aware of O'Neal's *pro se* status and that she should therefore be extended *some* leniency. *See, e.g.*, *Amos v. Cain*, 2022 WL 610344, at *3 (N.D. Miss. Mar. 1,

---

[1] The Court notes that the discovery deadline lapsed well prior to this filing. *See* [10].

2022) ("This Court is cognizant that leniency should be extended to *pro se* litigants . . . However, the Court cannot excuse the *Pro Se* Plaintiffs' failure to comply with the most fundamental requests[.]"); *Calhoun v. Hargrove*, 312 F.3d 730, 733-34 (5th Cir. 2002) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)) ("It is well-established that '*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.'"). In resolving the pending issues, the Court has endeavored to afford O'Neal leniency but does note that it simultaneously bears no obligation to sift through the record and make every potential argument for her. *See Head v. Smith*, 2021 WL 4168390, at *2 (E.D. La. Sept. 2021) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)) (recognizing that the district court "has no duty to survey the entire record in search of evidence to support a non-movant's position.").

With that overarching background in mind, the Court turns to O'Neal's three claims asserted against Millstone.

*I.        Discrimination*

O'Neal's ADA discrimination claim is based upon Millstone's termination of her employment.

Generally speaking, "[t]he ADA prohibits covered employers from 'discriminating against a qualified individual on the basis of disability.'" *Green v. United Parcel Serv., Inc.*, 847 F. App'x 207, 210 (5th Cir. 2021) (quoting 42 U.S.C. § 12112(a)). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [she] was discriminated against because of [her] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas*." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)).

Under the familiar *McDonnell Douglas* framework, "[t]o establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that [she] has a disability; (2) that [she] was qualified for the job; and (3) that [she] was subject to an adverse employment decision on account of [her] disability." *LHC Grp.*, 773 F.3d at 697. If the employee makes this initial showing, a presumption of discrimination arises, which the employer can rebut with a "legitimate non-discriminatory reason for the adverse employment action." *Cannon v. Jacobs Field Servs. N.A., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Then, "[i]f the employer provides such a reason, the burden finally shifts back to the plaintiff to prove that 'either the reason is pretextual or, if that reason is legitimate, that the employee's disability was a substantial motivating factor in the decision.'" *Conner v. Noxubee Cnty. Bd. of Supervisors*, 2024 WL 1661129, at *7 (N.D. Miss. Apr. 17, 2024) (quoting *Diggs v. Burlington No. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018)).

As to the first prima facie element, Millstone concedes that O'Neal's third cranial nerve palsy diagnosis is a disability.

Concerning the second element, Millstone admits that O'Neal was qualified for the NCR Coordinator position at the time she was hired but that "her qualification status at the time of termination is uncertain." [32] at p. 7. Specifically, Millstone points out that 20/20 vision was a specific requirement for the position and "[a]though Plaintiff claimed to have 20/20 vision, she had not been cleared to return to work by her physician and failed to provide any documentation verifying that her vision met the job's essential requirements." *Id*. To be clear, Millstone's argument as to O'Neal's qualification at the time of her initial hiring is irrelevant since the Fifth Circuit has made clear that "the relevant time for assessing the existence of a disability is the time of the adverse employment action." *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021)

(citations omitted). Nevertheless, the Court notes that in her July 1, 2024 email to Coleman, O'Neal represented to Coleman that she had "corrected 20/20 vision as required per [her] optometrist." [31], Ex. 9 at p. 1. Although the email itself is unsworn, the Court notes that, in her deposition, O'Neal confirmed that she indeed sent this email.

Taking all of this into account, the Court will assume, for purposes of summary judgment, that O'Neal has come forward with sufficient evidence to meet her burden of establishing that she had 20/20 vision and was therefore qualified for the NCR Coordinator position.

The Court turns to the third prima facie element, which "requires [the plaintiff] to prove 'that she was subject to an adverse employment decision on account of her disability.'" *Conner*, 2024 WL 1661129 at *7 (quoting *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021)) (additional citation omitted). It is undisputed that O'Neal's termination constitutes an adverse employment action. *See id*. However, Millstone contends that O'Neal cannot link her disabled status to the termination decision. Because Millstone's argument on this point merges with its argument that O'Neal cannot establish pretext, the Court will address it in the final step of the analysis. *Id*. at *8 (deferring analysis on causation issues to the pretext analysis).

Millstone's legitimate, nondiscriminatory reason for the termination decision is straightforward—specifically, that O'Neal "failed to return to work with a physician's release after exhausting her FMLA leave and was unable to perform her job duties due to her ongoing medical restrictions." [32] at p. 8. The Court accepts this articulated reason as sufficient to carry Millstone's burden at this stage of the proceedings. *Cannon*, 813 F.3d at 590.

At the final step, "the burden shifts back to the plaintiff to demonstrate either (1) that the defendant's reason is not true, but is instead a pretext for discrimination . . . or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating

factor is the plaintiff's protected characteristic." *Conner*, 2024 WL 1661129 at *8 (quoting *LHC Grp., Inc.*, 773 F.3d at 702)) (additional citation omitted).

This is where O'Neal's discrimination claim collapses. She has come forward with no evidence whatsoever to establish that Millstone's decision to terminate her was false or that her disability was a motivating factor in that decision. In her deposition, O'Neal was specifically asked about the basis for her discrimination claim and testified as follows:

> Q. . . . So I'll start with the Americans with Disability Act claims, and you're alleging that you were terminated based on a disability. So I just want you to state in your own words what specific acts do you think Millstone did that support that ADA claim for discrimination.

> A. Because instead of telling me to file for an extension, it seemed that she probably -- they probably -- they could have told me that I could have gone to my doctor to have them fill out paperwork for an accommodation, for the ADA accommodation. But I was told to apply for an extension, which I did, and then it was immediately denied. So I didn't know -- Like I said, I've never been in this position before, so I was only doing what she was telling me to do.

> Q. Okay. But you're alleging that they discriminated against you based on your disability, so I am asking: What did they do that suggests to you that it was -- that you were terminated due to some form of discrimination?

> A. By not mentioning the -- by not mentioning the ADA. And then after I was terminated and tried to apply for unemployment, and when I tried to apply for unemployment, they said that -- she told them that I voluntarily quit because of my health, and that's not what happened.

> . . .

> Q. -- what happened, if anything that suggests to you that you were discriminated against?

> A. That's not a form of discrimination for them to withhold information? I mean, like I said, I didn't know. I didn't have

> any other option. I mean, I wasn't told that I had any other option.

[31], Ex. 3 at p. 17-18.

Thus, by her own admission, O'Neal's only basis for her discrimination claim is that Millstone failed to direct her to seek some sort of accommodation. This allegation in no way indicates that Millstone's articulated basis for the termination—O'Neal's inability to return to work with medical clearance on July 8, 2024—was pretextual. *See*, *e.g.*, *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)) ("In response to a motion for summary judgment, an employee must present '*substantial evidence*' that the employer's legitimate, nondiscriminatory reason for termination is pretextual.") (emphasis added). In fact, O'Neal's contentions in no way address or undercut Millstone's articulated reason for the termination. Her mere allegation that Millstone did not advise her that she could seek an accommodation does not move the needle.

Ultimately, "[p]retext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Conner*, 2024 WL 1661129 at *10 (quoting *Delaval*, 824 F.3d at 480; *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). O'Neal simply has not done so.

Unable to establish pretext, O'Neal can prevail on her discrimination claim only by producing evidence "demonstrating that her disability was a motivating factor in her termination." *Id.* (citing *LHC Grp., Inc.*, 773 F.3d at 702). She likewise cannot preclude summary judgment via this alternative route. Put simply, the record is devoid of any evidence that O'Neal's disability played any role in the termination decision. Rather, it is clear that Millstone provided O'Neal the full amount of leave time to which she was entitled under the FMLA and advised her that if she

was unable to return to work on July 8, 2024 with medical release documentation, she would be terminated.

Throughout her deposition, O'Neal verified that she received multiple letters from Millstone advising her of her leave status and what would be required for her to return to work. Nonetheless, on July 8, 2024, O'Neal was unable to produce documentation indicating that she had been released to return to work. Millstone promptly terminated her thereafter. She has done nothing to establish that her underlying disability played any role in this decision.

In her Response [34], O'Neal contends that "Defendant's Human Resources Department had actual knowledge of Plaintiff's medical limitations and yet failed to inform her of her right to request reasonable accommodations or to engage in the required interactive process. Instead, Defendant directed Plaintiff to request an FMLA extension it knew she could not obtain." [34] at p. 1. Through this argument, O'Neal is seemingly attempting to establish that Millstone diverted her away from requesting an accommodation under the ADA and that the same establishes discriminatory animus in the termination decision. The problem with this argument is that it is conclusory and O'Neal has not developed any evidence to support it through the discovery process in this case. In essence, this simply constitutes her mere subjective belief. Pursuant to well settled law, this is insufficient pursuant to well settled law as an employee's "subjective belief of discrimination . . . cannot be the basis of judicial relief." *Delaval*, 824 F.3d at 480 (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995)).

To summarize, O'Neal has come forward with no competent summary judgment type evidence to establish that Millstone's decision to terminate her was pretextual or that her disability played any role in the decision. Her mere conclusory allegations are insufficient at this stage of the proceedings. *See, e.g.*, *Walls v. Pontotoc Health Servs., Inc.*, 2017 WL 1011478, at *2 (N.D.

Miss. Mar. 14, 2017) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) ("Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.").

O'Neal has come forward with nothing to substantiate her discrimination claim. It is hereby dismissed.

### B. Failure to Accommodate

To prevail on a failure to accommodate claim, a plaintiff must prove the following elements: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Trautman v. Time Warner Cable Tex., LLC*, 756 F. App'x 421, 430 (5th Cir. 2018) (quoting *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013); *Feist v. La. Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)).

Critically, "[a]n employee who needs an accommodation . . . has the responsibility of informing [her] employer." *Delaval*, 824 F.3d at 481 (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009)). "Special words, like 'reasonable accommodation,' need not be uttered, but the employer 'must explain that the proposed adjustment in working conditions . . . is for a medical condition-related reason.'" *Id.* (quoting *Chevron Phillips*, 570 F.3d at 621).

In her deposition, O'Neal admitted that she did not request that Millstone provide her with any accommodation:

> Q.    Okay. I will move to your failure to accommodate claim.
>
> So with that, I've asked you throughout this deposition, every time we discussed the FMLA leave, whether or not you requested some sort of reasonable accommodation, and

13

> you said, no, you didn't know that you had that option. Is that correct?
>
> A.    Correct.
>
> Q.    Okay. And you also said that you didn't request any unpaid leave. Right?
>
> A.    No, because I didn't know that was an option.

[31], Ex. 3 at p. 18.

Although O'Neal apparently contends that Millstone personnel should have told her that she should separately seek an accommodation under the ADA, the undisputed reality is that she did *not* make any such request. Again, she admitted as much in her deposition. *See* [31], Ex. 3 at p. 18.

Despite this admission, giving O'Neal the benefit of the doubt, the Court notes that in her July 1, 2024 email to Coleman, O'Neal requested "an extension of the FMLA because my last 2 doctor appointments are on July 16, 2024. I called this morning and left a message. I do have corrected 20/20 vision as required per my optometrist." [31], Ex. 9 at p. 1. However, at this point, O'Neal had already used all 12 weeks of leave to which she was entitled under the FMLA. Further, the Court notes that despite O'Neal pointing out in her July 1, 2024 email that she had two doctors appointments on July 16, 2024, she had previously advised Millstone of a July 19, 2024 appointment and she had also previously requested that her leave be extended through July 31, 2024. And despite noting these doctor's appointments, O'Neal still did not identify a specific date that she believed she would be able to return to work with medical clearance.

The Fifth Circuit has recognized that "[c]ourts confronted with [a request for indefinite leave] routinely deny the reasonableness of such accommodations." *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000) (citing *Rogers v. Int'l Marine Terminals, Inc.*,

14

87 F.3d 755, 759 (5th Cir. 1996)) (additional citation omitted). Although this case differs insofar as O'Neal seemingly did not specifically request an indefinite leave of absence, she did not provide a date that she believed she would be able to return.

In sum, O'Neal herself admitted that she did not request a reasonable accommodation. Setting aside that admission and taking into account the email that she submitted to Millstone, the fact remains that O'Neal never requested a reasonable accommodation under the ADA—she only requested an extension of her FMLA leave beyond the 12-week period to which she was entitled. The Fifth Circuit has made clear that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." *Acker v. General Motors, LLC*, 853 F.3d 784, 791 (5th Cir. 2017). Even further, to the extent that O'Neal's July 1, 2024 email is treated as a request for a leave extension, she never provided a date for which she would be able to return to work, and Millstone was under no obligation to provide her indefinite leave.

O'Neal has not come forward with sufficient evidence to preclude summary judgment on her reasonable accommodation claim. It is hereby dismissed.

### C. Retaliation

To establish a prima facie retaliation claim, a plaintiff must prove: "(1) she engaged in an activity protected by the ADA; (2) an adverse employment action occurred; and (3) a causal connection exists between the protected act and the adverse action." *Credeur v. La. Off. Of Att'y Gen.*, 860 F.3d 785, 797 (5th Cir. 2017) (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). "Once the plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. If such a reason is advanced, the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse

15

employment action would not have occurred." *Seaman*, 179 F.3d at 301 (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112 (5th Cir. 1998)).

O'Neal's retaliation claim is fatally deficient because she never engaged in an activity protected by the ADA. To reiterate, O'Neal's request for an extension of FMLA leave does not constitute a protected activity under the ADA. *See Gray v. Winco Foods, LLC*, 683 F. Supp. 3d 571, 587 (E.D. Tex. 2023) (citing *Acker*, 853 F.3d at 791) ("[The plaintiff's] FMLA leave request was not a request for an accommodation under the ADA under binding Fifth Circuit precedent.").

When questioned about the basis for her retaliation claim in her deposition, O'Neal testified as follows:

> Q. Okay. So, again, I just want to make sure I'm clear. So where -- what actions do you think were retaliatory on the part of Millstone?
>
> A. Because they -- they didn't -- they didn't' actually give me an opportunity to go to the doctor or event at that point say -- even at that point they didn't even say anything about the ADA or you can get accommodations or whatever. They knew previously that I had already said when my doctors' appointments were and that I had attempted, you know, to try to get them changed or moved up or whatever.
>
> And then also after that -- on that day, I started calling around, which is when I found out about the ADA and the accommodations. I had no idea about that at all, but it was never mentioned to me. Had it been mentioned, then maybe I could have went that route and still been working today, because I would have, you know, went to the doctor and had him fill out the paperwork for accommodations. I just felt like some information was withheld. And during my unemployment appeal, that came out.

[31], Ex. 3 at p. 18.

Despite providing a lengthy response, O'Neal did not identify a protected activity under the ADA. Furthermore, even if O'Neal could establish a prima facie case of retaliation, the onus

16

would eventually fall back to her to "adduce sufficient evidence that the proffered reason is a pretext for retaliation . . . [and] show that 'but for' the protected activity, the adverse employment action would not have occurred." *Seaman*, 179 F.3d at 301 (citation omitted).

The Court has already addressed the lack of any evidence of pretext in its discrimination analysis. The same logic applies here, and the Court sees no need to repeat the basis for its conclusion on that point.

Ultimately, O'Neal's retaliation claim cannot survive summary judgment. It is hereby dismissed.

D.      *Additional Matter*

As noted at the outset, the Court has made every effort to extend leniency to O'Neal considering her *pro se* status. On the other hand, the Court notes that Millstone has provided minimal documentation to support its position—the only sworn evidence it provided was O'Neal's deposition testimony. This reality has left the Court in a precarious situation. Nonetheless, based upon the applicable *McDonnell Douglas* framework, the Court believes that dismissal of all claims is appropriate.

*Conclusion*

For the reasons set forth above, Millstone's Motion for Summary Judgment [31] is GRANTED. All of O'Neal's claims are hereby dismissed *with prejudice*. A Final Judgment consistent with this Order and Memorandum Opinion will issue this day.[2]

SO ORDERED, this the 26th day of March, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] O'Neal's Motion to Exclude [33] is TERMINATED. In reaching its conclusion herein, the Court has not taken into account the employment records and statements with which O'Neal took issue. Millstone's Motion to Strike [35] is likewise TERMINATED. The Court has considered the substance of O'Neal's Response [34].